May Term, **1859.**

DICKERSON
v.
TURNER.

Mr. *Smith*, for the appellees, added the following:

The question is—Can a junior mortgagee redeem mortgaged premises, in the hands of the purchaser? Conceding this question in favor of appellant, we say this assumed junior mortgagee cannot sustain this complaint to re-deem, for the following reasons:

*First.* The note and mortgage that he seeks to enforce, were paid off and satisfied before it was assigned to him, leaving the only liability to him be-tween himself and assignee, for the amount he paid for the assignment; and he says he paid nothing. So he has no claim on the mortgage or note.

*Second.* The appellant shows that he claims only a part of the amount se-cured by the second mortgage; and still he sues alone, without making the other claimants for the residue of the second mortgage parties.

*Third.* The appellant seeks to redeem the lots, without a tender of the amount due on the first mortgage, with the interest and costs of sale, and without bringing the money into Court. This is fatal in all such cases.

*Fourth.* The appellees, in any and all events, had a right to pay off the junior mortgage, and perfect their equitable, as well as legal, title.

---

## DICKERSON and Others *v.* TURNER and Another.

A notarial protest of a bill of exchange, showing that on the day when the bill became payable it was presented to the book-keeper of the drawee, at his office, &c., is presumptive evidence of the facts stated in it, and is admissible in evidence in a suit upon the bill.

Whether or not such a protest is sufficient to prove a *proper* presentment, is a question that could not arise on the objection to its admissibility.

Circumstances rendering such a presentment proper, may be proven aside from the protest, if such proof be necessary.

The plaintiffs in this case proved that, since the suit was commenced one of the attorneys for the plaintiffs, being surprised at learning that a defense would be set up, took one of the defendants aside, viz., *Charles Dickerson*, and had a conversation with him in reference to the bill. Witness presented

the bill to *Dickerson* and asked him if he was liable upon it. *Dickerson* replied that he was willing to stand as surety upon it. Witness told him he was liable or not, and if liable he wanted to know it, and if not, he wanted to know it. *Dickerson* then gave the witness a detailed history of the bill, and the matters out of which it grew. He said the bill was signed by his son, *Hendricks Dickerson* (now deceased), who was one of the firm of *Dickerson, Bethell & Co.* (the firm name in which the bill is drawn), that firm. being composed of said *Charles Dickerson, Hendricks Dickerson, Chester Bethell,* and *Frank Bethell;* that *Chester Bethell* and *Aaron Shelby,* composing the firm of *Shelby* and *Bethell,* owed an old debt to *Turner* and *Wilson,* the plaintiffs, and this bill was drawn by the firm of *Dickerson, Bethell & Co.,* and indorsed by *Chester Bethell,* to secure the plaintiffs the old debt. Witness told *Dickerson* that if the bill was drawn in that way, he was liable upon it. *Dickerson* admitted he was liable as surety for *Chester Bethell;* that it was *Chester's* debt; and that he, *Hendricks,* and *Frank Bethell* were sureties in the bill for *Chester.* Witness inquired of him why they were putting in a defense to the action. He replied that the debt was just, but there was a settlement to be made between the plaintiffs and *Chester Bethell.* Witness then called his attention to some indorsements of credits on the bill, remarking that these showed that a settlement had already been made. *Dickerson* said he knew nothing about that settlement, but then said that *Chester Bethell* wanted to delay the case until he could hear from his old partner, *Shelby,* who had gone to *Oregon,* and who was a good deal behind with him; that he expected funds from him, or expected, in some way, to throw off the payment of this bill, or a part of it, on to *Shelby,* from whom he expected to hear at every mail.

*Held,* 1. That *it seems* that accommodation drawers, who unite as drawers with the person for whose accommodation they draw, are entitled to notice of nonpayment, if they had reason to expect their principal to provide funds to meet the bill.

2. That the admission, by one of the drawers, of liability as surety, and that the debt was just, was sufficient evidence of a proper presentment and notice of non-payment.

3. The bill, being in evidence, showed the drawers to be joint contractors; and the admissions of one of the drawers bound his co-contractors—they stood, in this respect, in a relation similar to that of existing partners.

4. That an order that the sheriff levy the execution to be issued upon the judgment in this case, upon the property of *Chester Bethell,* and exhaust that, before a levy should be made upon property of the other defendants, upon the ground that he was the principal, and the others sureties, was erroneous, being based wholly upon the admissions of one of the other defendants.

APPEAL from the *Warrick* Circuit Court.

WORDEN, J.—Action by the appellees, as holders, against the appellants, as drawers, of a certain bill of exchange, drawn by the appellants upon *James Turner,* of *New Orleans, Louisiana,* in favor of *Chester Bethell,* and by him indorsed to the plaintiffs.

There was a demurrer to the complaint, which was over-ruled, and exception was taken. This ruling is assigned for error, but as no objection is pointed out in the brief of counsel, we shall treat the complaint as good. We see no substantial defect in it.

Answer in denial, and trial by the Court; finding for the plaintiffs and judgment, overruling a motion for a new trial.

The plaintiffs, on the trial, introduced the bill described, with the indorsement thereon, together with a notarial protest, by which it appears that on the day the bill became payable, it was presented to the book-keeper of the drawee for payment, at his office in *New Orleans*. This protest was objected to as inadmissible, because it did not show a presentment to the drawee, nor show any reason for presenting it to his book-keeper.

We are of opinion that the protest was properly admitted in evidence, as it was presumptive evidence of the facts therein stated, to-wit, a presentment of the bill to the book-keeper of the drawee, and non-payment. *Turner* v. *Rogers*, 8 Ind. R. 139.

Whether or not it was sufficient to prove a proper presentment, is a question that did not arise on the objection to its admissibility. Admissibility is one thing, sufficiency, another. Without undertaking to determine whether the protest furnished sufficient evidence of the dishonor of the bill, or, in other words, whether a presentment to the book-keeper of a drawee, at his office, is *prima facie* sufficient, or otherwise, we think circumstances rendering such presentment proper, may be proven, aside from the protest, if such proof be necessary.

The plaintiffs further proved, that since the suit was commenced, one of the attorneys for the plaintiffs, being surprised at learning that a defense would be set up, took one of the defendants aside, viz., *Charles Dickerson*, and had a conversation with him in reference to the bill. Witness presented the bill to *Dickerson* and asked him if he was liable upon it. *Dickerson* replied that he was willing to stand as surety upon it. Witness told him he was liable

or not, and if liable he wanted to know it, and if not, he wanted to know it. *Dickerson* then gave the witness a detailed history of the bill, and the matters out of which it grew. He said the bill was signed by his son, *Hendricks Dickerson* (now deceased), who was one of the firm of *Dickerson, Bethell & Co.*, (the firm name in which the bill was drawn), that firm being composed of said *Charles Dickerson, Hendricks Dickerson, Chester Bethell*, and *Frank Bethell;* that *Chester Bethell* and *Aaron Shelby*, composing the firm of *Shelby* and *Bethell*, owed an old debt to *Turner* and *Wilson*, the plaintiffs, and this bill was drawn by the firm of *Dickerson, Bethell & Co.*, and indorsed by *Chester Bethell*, to secure the plaintiffs the old debt. Witness told *Dickerson* that if the bill was drawn in that way, he was liable upon it. *Dickerson* admitted he was liable as surety for *Chester Bethell;* that it was *Chester's* debt, and that he, *Hendricks Dickerson* and *Frank Bethell* were sureties in the bill for *Chester*. Witness inquired of him why they were putting in a defense to the action. He replied that the debt was just, but there was a settlement to be made between the plaintiffs and *Chester Bethell.* Witness then called his attention to some indorsements of credits on the bill, remarking that these showed that a settlement had already been made. *Dickerson* said he knew nothing about that settlement, but then said that *Chester Bethell* wanted to delay the case until he could hear from his old partner, *Shelby*, who had gone to *Oregon*, and who was a good deal behind with him; that he expected funds from him, or expected in some way, to throw off the payment of this bill, or a part of it, on to *Shelby*, from whom he expected to hear at every mail.

The question arises, whether, on the foregoing evidence, the plaintiffs were entitled to recover.

It is insisted, on the part of the appellees, that the evidence shows a want of funds of the drawers in the hands of the drawee, and, therefore, there was no need of any proof of dishonor of the bill and notice to the drawers. It is doubtful whether this proposition can be maintained as against accommodation drawers, as were the defendants in

this case. *Cory* v. *Scott*, 3 B. and Ald. 619.—*Norton* v. *Pickering*, 8 B. and C. 610.—Chit. on Bills, 438. To be sure *Chester Bethell*, for whose accommodation the bill was drawn, was one of the drawers; but if the other drawers had taken up the bill, they would have had a remedy against him for the amount thus paid. A case similar to the present, in this respect, has recently been determined in *Ohio. Abiser* v. *Trooniger's ex'rs*, 7 Ohio State R. 281. It was there held that accommodation drawers, who unite as drawers with the person for whose accommodation they draw, are entitled to notice of non-payment if they had reason to expect their principal would provide funds to meet the bill.

But however this may be, we think the statements made by *Charles Dickerson* are sufficient to sustain the finding of the Court. There is a distinct admission of liability, as the surety of *Chester Bethell*, that the debt was just; and from the whole tenor of the conversation, it is evident that *Dickerson* did not contemplate any objection to payment, on the ground that the bill had not been properly presented to the drawee for payment, and the defendants notified of the non-payment.

It will be observed that the evidence does not show that the defendants were discharged by the *laches* of the holders of the bill. Where such discharge is not shown, a promise to pay the bill by the drawer is presumptive evidence of due notice. Edwards on Bills, 625.

Here, there was no direct promise on the part of *Dicker-son* to pay the bill; but there was an admission of liability, which is the very thing inferred from the promise. "The cases go to this point only, that if, after the dishonor of the bill, the drawer distinctly promises to pay, that is evidence from which it may be inferred he has received notice of the dishonor; because men are not prone to make admissions against themselves; and, therefore, when the drawer promises to pay, it is to be presumed he does so because he knows the acceptor has refused. The promise is not direct evidence of the fact; but, in the language of Mr. Justice BAILEY, where a party to a bill or note, knowing it

to be due, and knowing that he was entitled to have it presented, when due, to the acceptor or maker, and to receive notice of its dishonor, promises to pay it, this is presumptive evidence of the presentment and notice, and he is bound by the promise so made." *Id.* 652. And, again, says the same author, p. 654, "Where it does not appear that the drawer or indorser has been discharged by the *laches* of the holder, a qualified promise, taken in connection with the facts and circumstances, has been held in several cases presumptive evidence of demand and notice. As an admission, it is evidence for the jury, like any other conversation; if the liability of the drawer or indorser be conceded by him, the concession is quite as good evidence of demand and notice as a promise to pay; for, as we have said, a promise to pay is deemed an admission of liability; an admission that the bill or note has been presented in time, and that due notice of non-payment has been given."

This is the ground of the decision in *Gibbon* v. *Coggan,* 2 Camp. 188. There the drawer of a bill being called upon to pay, said "that his affairs were, at that moment, deranged, but that he would be glad to pay it as soon as his accounts with his agent were cleared." Per Lord ELLENBOROUGH. "By *Colburn's* (the drawer's) promise to pay, he admits his liability. He admits the existence of everything which is necessary to render him liable. When called upon for the payment of the bill, he ought to have objected that there was no protest. Instead of doing that, he promises to pay it. I must, therefore, presume that he had due notice, and that a protest was regularly drawn up by a notary."

With this view of the law, we think the Court below was sustained by the evidence in finding that the bill had been dishonored and due notice given.

But it is insisted that, as the admission made by *Dickerson,* was made after the dissolution of the partnership, it could not, in the least, affect the other parties.

This is a question upon which the decisions are conflicting. *Vide Doughton* v. *Tillay,* 4 Blackf. 433. In a later case, *Kirk* v. *Hiatt,* 2 Ind. R. 322, it was held, an admis-

sion by a partner, after the dissolution, but made at a time of the payment to him of a partnership debt, is admissible against the other partners. This is upon the principle that there is an agency in the partner, by which he is empowered to receive and receipt for partnership debts.

In an older case, *Yandes* v. *Lefavour*, 2 Blackf. 371, it was held to be settled on *American* authority, "that after the dissolution of a partnership, one partner cannot bind the other by the admission of a debt."

This question, however, does not legitimately arise in the case, and, therefore, we shall not pass upon it. We leave it open, because the conclusion to which we have come would be the same, whatever might be our views as to the effect of an admission by a partner after dissolution.

The defendants were partners, but so far as the point under consideration is concerned, we think that circumstance is wholly immaterial. The parties defendant were joint contractors, and had a joint interest in the subject of the suit. Mr. *Greenleaf* says: "that in the absence of fraud, if the parties have a joint interest in the matter in suit, whether as plaintiffs or defendants, an admission made by one, is, in general, evidence against all. They stand, in this respect, in a relation similar to that of existing partners." 1 Greenl. Ev. 174. As one illustration of the rule, a case is cited where two persons were bound in a single bill, and the admissions of one held good against both. In a note to the section cited, the author says, that the propriety, and the extent of the application of the rule, have been much discussed, and sometimes questioned, but it seems now to be clearly established.

The leading case on this subject is that of *Whitcomb* v. *Whiting*, 2 Doug. 652, which was an action against one of several joint and several makers of a promissory note, and it was held that proof of payment by one of the others, of interest on the note and part of the principal, took the case out of the statute of limitations as against the defendant who was sued. Lord MANSFIELD said: "Payment by one is payment for all, the one acting virtually for all the rest; and in the same manner an admission by one is an admis-

May Term,
1859.

DICKERSON
v.
TURNER.

sion by all, and the law raises the promise to pay when the debt is admitted to be due."

The doctrine of *Whitcomb* v. *Whiting.* so far as it holds an admission by one to be sufficient to take a case out of the statute of limitations, has been controverted in this country, and it has been overruled by the Supreme Court of the *United States,* by the Court of Appeals of *New York,* and the Supreme Court of this state, at an early day. *Vide Bell* v. *Morrison,* 1 Pet. 351; *Van Keuren* v. *Parmelee,* 2 Coms. 523; *Yandes* v. *Lefavour,* 2 Blackf. 371; *Kirk* v. *Hiatt, supra.*

The modern and more correct doctrine is, that it is the new promise as such, supported by the original consideration, that takes a case out of the statute, and not the new promise, viewed merely as an admission of the debt. The case of *Bell* v. *Morrison, supra,* is decided upon the ground that the new promise or acknowledgment is not a mere continuation of the original promise, "but a new contract, springing out of, and supported by, the original consideration." Such new contract, neither a joint contractor, nor a partner, after the dissolution, has power to make so as to bind his co-contractor or co-partner.

We do not, however, find much controversy in reference to the other branch of the decision in *Whitcomb* v. *Whiting, supra,* that is to say that the admission of one is an admission by all. In *Bell* v. *Morrison,* it seems to be taken for granted by the Court, that if the bare admission, without a new agreement either express or implied, to pay the debt, would take a case out of the statute, such admission made by one, would be good as to all.

The proposition cited from *Greenleaf,* has been recognized and acted upon in this Court. *Parker* v. *The State,* 8 Blackf. 292. *Parker* and his sureties were sued on his official bond as a justice of the peace. *Parker's* letters showing a breach of the bond, were offered in evidence. The Court say: "It is objected that *Parker's* letters are not evidence against the sureties; but we think they were. The obligors were all jointly interested as to the facts admitted in the letters, and the admission of those facts, by

any one of the obligors, was, therefore, admissible evidence
against them all." *Vide,* also, *Chapel* v. *Washburn,* 11
Ind. R. 393.

In *Bridge* v. *Gray,* 14 Pick. 55, it was said that, "It must be considered as a general rule, that upon each joint contract the admissions of a joint debtor, as to the existence, payment, and settlement of the joint debt, are admissible to bind the joint debtor, and to many purposes the character of joint debtors, when once established, must be deemed to continue until the debt is paid, or by some other means legally canceled, barred, or discharged."

The reasoning of BRONSON, J., in *VanKeuren* v. *Parmelee, supra,* strongly militates against this doctrine; but we think it safer to adhere to it, as it seems to be thoroughly established, than to unsettle the rule.

Applying the principle to the case at bar, it seems to us that the admissions of *Charles Dickerson* must be good as against all the defendants. The production of the bill in evidence made out a case of joint contract. There was no controversy as to the making of the bill by the defendants. The admissions were not of facts necessary to be proven, in order to show a joint contract. The admissions of one, that they were joint contractors, could not be received as against the others; because, until the joint contract is proven by competent testimony, there is no ground laid for the admission at all, as against the other parties. But here the joint contract was shown by the bill itself, and this authorized the admission of one of the parties, in reference to it, to be given in evidence against his co-contractor.

The admission of *Dickerson,* that he was liable on the bill, is equivalent to an admission that the bill had been dishonored, and that due notice had been given. Now we cannot see how he could have been liable unless the rest of the defendants were. If the defendants are to be viewed as partners, notice to one was notice to all. If notice to one is not notice to all, then notice must be given to all, in order to hold any liable. *The State Bank* v. *Slaughter,* 7 Blackf. 133. If he was liable, according to his admissions, they all were. The facts that would make him liable

May Term, 1859.

DICKERSON v. TURNER.

would make them all liable, so far as protest and notice are concerned.

On the whole, we think the Court did not err in overruling the motion for a new trial.

After the rendition of judgment for the plaintiffs, the Court, upon the testimony adduced upon the trial, made an order that the sheriff levy the execution to be issued upon the judgment, upon the property of *Chester Bethell*, and exhaust his property, before a levy should be made upon the property of the other defendants, upon the ground that said *Chester* was principal, and the other defendants sureties. To this order, *Chester* excepted.

We think this order was wrong. There was nothing before the Court to show that the other defendants were sureties merely for *Chester*, and that he was the principal debtor, except the admission of *Charles Dickerson*, and that admission is not competent, as between themselves, to prove that fact. An admission by *Chester*, that he was principal and the others sureties, would probably be sufficient; but the statement of *Dickerson* to that effect, could not be received for that purpose, as it would be permitting a man, by his own statement, to make out a case in his own favor, or, in other words, to manufacture testimony for himself.

This order, although wrong, does not at all affect the proceedings of the plaintiffs. 2 R. S. p. 186, § 674. But as the order is assigned for error by said *Chester*, it will have to be set aside.

*Per Curiam.*—The judgment is affirmed with 3 per cent. damages and costs; and the order of the Court, directing the execution to be levied first on the property of *Chester Bethell*, as principal, is set aside.

*C. Baker*, for the appellants (1).

*A. L. Robinson* and *H. Q. Wheeler*, for the appellees (2).

(1) Mr. *Baker*, for the appellants, argued as follows:

The judgment is not sustained by the evidence for two reasons, to-wit:

1. There was no attempt made to prove notice to the defendants or to either of them, of the protest of the bill.

2. There was no evidence of a want of effects in the hands of the drawee.

It is alleged in the complaint and appears from the evidence, that the firm of *Dickerson, Bethell & Co.* was composed of *Charles Dickerson, Hendricks Dickerson, Chester Bethell,* and *Frank Bethell,* and that *Hendricks Dickerson* died in *September,* 1855, long prior to the commencement of this action, and by his death the firm was dissolved.

As there was no attempt made to prove notice to the defendants, of the dishonor of the bill, there could be no recovery under the first paragraph of the complaint. Let us inquire whether there was any evidence to justify a recovery against all or any of the defendants under the second paragraph of the complaint, and in prosecuting this inquiry we will endeavor to establish three propositions, to-wit:

1. That there is no evidence of a want of effects in the hands of the drawee of the bill, sufficient to justify a judgment against any of the defendants.

2. That if the above proposition is not established to the satisfaction of the Court, still the evidence did not justify a verdict against the defendants, *Chester Bethell* and *Frank Bethell,* because there is not a particle of evidence tending to show that the drawers of the bill had no effects in the hands of the drawee, except the declarations of *Charles Dickerson,* and these were not binding on the other defendants, because they were made, as the record shows, long after the dissolution of the firm of *Dickerson, Bethell & Co.,* by the death of *Hendricks Dickerson,* as before stated.

3. The order requiring *Chester Bethell's* property to be exhausted before the property of the other defendants should be levied upon, on the ground that he was the principal debtor, was made without any evidence except the admissions or declarations of *Charles Dickerson.*

We insist then, in the first place, that there was no evidence of a want of effects of the drawers in the hands of the drawee, sufficient to warrant a judgment against either of the defendants. To excuse the want of notice of the dishonor of the bill, it was necessary for the plaintiffs to show an entire want of effects in the hands of the drawee, continually, from the time of the drawing of the bill until the time it fell due, and this under such circumstances as to establish that the drawers had no right to expect that the drawee or any other person would pay the bill. Chit. on Bills, 345. It is a presumption of law that the drawers have been damaged by want of notice, and almost the only allowed proof of the negative is such a total want of effects as is above stated. *Id.* 435. Whenever, says the same author (p. 438), a party to a bill is entitled to his remedy over against another party, either on the bill or otherwise, as he may be prejudiced by the delay in giving him notice of the dishonor, he is entitled to due notice thereof. Applying these principles to the evidence in this case, let us inquire whether the testimony even tends to show such a want of effects. The only evidence introduced by the plaintiff was—

1. The bill and its indorsement and a memorandum of a credit on the back of it. 2. The protest of the bill. 3. The testimony of *Andrew L. Robinson,* Esq., one of the plaintiffs' attorneys, as to certain admissions or declarations made to him by *Charles Dickerson,* one of the defendants, immediately before the trial.

The bill, on its face, waived acceptance, and this is relied on as a circumstance to prove a want of effects. The waiver of acceptance amounts to nothing, as without this waiver it was not incumbent on the holder to present the bill for acceptance, it being payable at a fixed time (eleven months) after date.

Chit. on Bills, 272. But if this waiver did tend to prove a want of effects at any time, it was only at the time of the drawing of the bill; it did not surely tend to prove that the drawee was not placed in funds to meet the bill during the eleven months between its date and its maturity.

The waiver of acceptance, then, does not prove a want of effects in the hands of the drawee. The protest does not, of course, show a want of effects such as would justify an omission of notice, for if it did, there would be no necessity of proving notice of protest in any case, as the protest would establish a want of effects, and this want of effects would excuse the omission to give notice of the dishonor. It will not be pretended that the bill and its indorsements show a want of effects, and this brings us to the only other evidence in the case, viz., Major *Robinson's* testimony as to the admissions of *Charles Dickerson*, one of the defendants. Now, on the supposition that these admissions were binding on the other defendants, we insist that they do not show such a want of effects as would justify an omission to notify the drawers of the bill of its dishonor. These admissions only show that the bill was drawn by *Dickerson, Bethell & Co.*, for the accommodation of the firm of *Shelby* and *Bethell*, to pay a debt, which the last-named firm owed the plaintiffs, and that *Chester Bethell*, the payee and indorser of the bill, was a member of both firms, and indorsed the bill to the plaintiffs, one of the plaintiffs being the drawee. Now these very admissions show that the bill was drawn for the accommodation of *Shelby* and *Bethell*, and that the drawers had a right to expect that they, *Shelby* and *Bethell*, would provide for it, and as it was given for the debt of *Shelby* and *Bethell*, the drawers would have their remedy over against that firm, and were, therefore, entitled to notice. The plaintiffs appear to give considerable weight to the circumstance that the bill was drawn on *James Turner*, taken in connection with *Dickerson's* admission that it was given to pay a debt due to himself and his partner *Wilson;* but how this could negative the idea that the drawee was placed in funds to meet the bill during the eleven months that intervened between its date and maturity, I am at a loss to conjecture. I think then I am warranted in saying that the evidence not only does not prove, but does not tend to prove such a want of effects as would excuse the want of notice.

But if I am mistaken in this, still the judgment against *Chester Bethell* and *Frank Bethell* is erroneous, because the admissions of *Charles Dickerson*, upon which it was based, were made after the dissolution of the firm of *Dickerson, Bethell & Co.*, and were, therefore, not binding on the other defendants. It is a well settled principle of law, that after the dissolution of a partnership, one partner cannot, by declarations or acknowledgments, bind his co-partners, but that his power to bind, either by his acts or his declarations, wholly ceases with the dissolution. *Yandes* v. *Lefavour*, 2 Blackf. 371.—*Kirk* v. *Hiatt*, 2 Ind. R. 324, 325.—*Chase* v. *Kendall*, 6 *id.* 306. The only evidence in the case, except the bill itself, and the protest thereof, consists of the declarations of *Charles Dickerson*, and these declarations were not only made after the dissolution, as before stated, but were clearly made in relation to a transaction with reference to which *Dickerson* was in no sense the agent of the other members of the firm. The statements in Mr. *Robinson's* testimony in relation to *Dickerson's* refusing to attend Court after being subpœnaed, and in relation to *Bethell's* avoiding the service of the subpœna, might have afforded a good ground for an application

for a continuance, or for an attachment against the supposed delinquents, but surely could not justify a judgment against them without evidence.

The Court not only rendered judgment, but ordered that *Chester Bethell's* property should be exhausted before the property of the other defendants should be levied upon, and this order, as well as the judgment, has no other basis than the declarations of *Dickerson* himself.

We think we have demonstrated, first, that there could be no recovery under the first paragraph of the complaint, because there was no attempt to prove notice of the dishonor of the bill; secondly, that there could be no recovery under the second paragraph of the complaint, because there was no evidence proving, or tending to prove, that the bill was drawn for the accommodation of the drawers, and that they, continuously, from the time of the drawing of the bill until it became due and payable, had no effects, whatever, in the hands of the drawee.

(2) The following was the argument of Mr. *Robinson*, for the appellees:

It is difficult to ascertain, by the brief of appellants, how many of the assignments of error are relied upon. That there may be no omission, I will take up each assignment separately.

1. In overruling the demurrers to the plaintiffs' complaint.

The demurrers to separate parts of the complaint, calling them the first and second paragraphs (and they are so designated by the clerk, in making up the record), are not well taken, for the reason that only one cause of action is set out. See 2 R. S. p. 38. "When the complaint contains more than one cause of action, each shall be distinctly stated in a separate paragraph, and numbered." That part of the complaint designated by the clerk as the second paragraph, is the amendment made by *Turner* and *Wilson*, by leave of the Court, showing why notice of the non-payment of this bill of exchange had not been given to the drawer.

The complaint, before the amendment was made, was clearly sufficient, for it contains all the material allegations necessary in suits against the drawers of bills of exchange.

2. In admitting the certificate of protest in evidence.

There was no error in this. See 2 R. S. p. 91, § 281; *Turner* v. *Rogers*, 8 Ind. R. 139. Our code authorizes the protest of bills of exchange for non-payment, and when protested, the holder is entitled to 5 per cent. damages upon bills of this sort. 1 R. S. p. 379, § 7. Without a protest, the drawers would have been liable to the holder for principal and interest due upon the bill, merely upon a notice of non-payment, or even without a notice, if the facts (as in this case) were such as to render a notice of non-payment wholly unnecessary.

"Certificates of protest shall be received as presumptive evidence of the official character of such instrument and of the facts therein set forth."

A personal presentment for payment of a bill, is not necessary. A presentment at the place of business of the drawee is sufficient. Story on Bills, §§ 350, 351. See, also, *Sharpe* v. *Drew*, 9 Ind. R. 281. In this case, "the bill was presented to the book-keeper of *James Turner*, the drawee, at his office, in this city (*New Orleans*)."

3. In finding for the plaintiffs on the evidence set out in the record, and in refusing the appellants a new trial.

May Term,
1859.

DICKERSON
v.
TURNER.

The admissions of *Charles Dickerson*, one of the appellants, that they were liable upon this instrument, settles the whole case. These admissions, made deliberately, and with full explanations, show, not only the liability of *Dickerson* himself, but also the liability of all the defendants. They became liable by drawing this bill by the name, style, and firm of *Dickerson, Bethell & Co.*, which, at that date, was composed of four partners, *Charles Dickerson, Chester Bethell, Frank Bethell,* and *Hendricks Dickerson*, the last-named having died before the commencement of this suit.

*Hendricks Dickerson* drew the bill. It was given to pay an old debt which *Chester Bethell* owed *Turner* and *Wilson*, and *Charles Dickerson* expressly admits his liability; so that here is a liability fixed upon two of the parties to this bill beyond question. The credits on the back of the bill strongly corroborate the statement made by *Dickerson*.

It is said "there was no evidence of a want of effects in the hands of the drawee of the bill, sufficient to justify a judgment against any of the defendants, and that the waiver of acceptance does not prove a want of effects in the hands of the drawee." The waiver of acceptance does prove that the drawers, *D., B. & Co.*, had no effects in the hands of drawee at that time; but all the facts together—this waiver of acceptance, with the fact that the bill was given in liquidation of an old debt due from one of the drawers (*Chester Bethell*), to *Turner* and *Wilson*, the bill being drawn upon *James Turner*, one of the firm to whom this old debt was due, with the admissions of *Charles Dickerson* that he was liable as surety—make a pretty strong case. All these facts, taken together, prove that *Turner* not only had none of the money of *Dickerson, Bethell & Co.*, but that *Chester Bethell*, one of the firm, was indebted to *Turner* and *Wilson*, and could not pay them, and he procured his three partners (the other defendants) to become his sureties for that debt, upon paper which had eleven months to run. They saw fit to put the debt in the form of a bill of exchange, such as is set out in the complaint. At the expiration of the eleven months, he fails to pay, and on being sued for the money, times being hard and cash difficult to raise, he concludes to take further time, and so gets up a few points and brings the case to this Court, with the chances of two years delay, before judgment will be affirmed.

Upon the supposition that *Dickerson, Bethell & Co.* had effects in the hands of *James Turner* (the drawee), they have done what no other men of common sense ever did, and what none but crazy men would do. Let us put the case in a few brief words just as it appears on this record. *James Turner* has 1,497 dollars, 39 cents in his hands belonging to *Dickerson, Bethell & Co.* They draw a bill of exchange for that amount upon *Turner*, and waive acceptance of the bill, and then immediately indorse it over, by *Chester Bethell*, one of their firm, and deliver it to the drawee himself, so that they are left without a shadow of evidence to prove that *Turner* is their debtor for a dollar. And this story is gravely told to the Supreme Court with the expectation of full credence.

But it is said that the firm of *Dickerson, Bethell & Co.* was dissolved by the death of *Hendricks Dickerson*, and that the admissions of *Charles Dickerson* having been made after such dissolution, the other parties are not bound by them, and appellants have cited several authorities. A brief reference to them may not be amiss. The case of *Yandes* v. *Lefavour*, 2 Blackf. 371, decides that after the dissolution of a partnership, one partner cannot bind another by admissions which have the effect of a new contract, nor can a partner, under

such circumstances, by his admission or promise, revive a debt already barred by the statute of limitations.

The case of *Kirk* v. *Hiatt*, 2 Ind. R. 322, decides the same principle. The case of *Chase* v. *Kendall*, 6 *id.* 306, decides, that after the dissolution of a partnership, the firm is not bound by the new contracts of a partner. But none of those cases are similar to the one under consideration. *Charles Dickerson* did not attempt to make a new contract, nor to revive a debt which had been barred by the statute of limitations.

His admissions were made in reference to facts which had transpired during the partnership. 3 Kent's Comm. 51. In discussing this subject Mr. *Kent* says: "But there is a distinction between an acknowledgment which goes to create a new contract, and the declarations of a partner made after the dissolution of the partnership, concerning facts which transpired previous to that event, and declarations of that character are held to be admissible."

This authority and reasoning are directly in point, and are sufficiently conclusive. There can be no doubt that these admissions made by *Charles Dickerson*, of these facts set out in the record, and of his liability to pay this bill of exchange, are conclusive against his partners:

These admissions, thus deliberately made, giving all the dates and circumstances touching the transaction, prove, also, that the bill of exchange was duly presented for payment, and was protested for non-payment. Story on Bills, § 320, and note—also § 373, and note 3, which recognizes the doctrine that a promise of payment is an admission that the bill had been duly presented for payment, protested for non-payment, and notice of dishonor given to the drawers. There is no difference in principle nor in legal effect, between an admission of liability and a promise of payment.

Permit me to refer to some peculiar circumstances. Here are plaintiffs endeavoring to bring the defendants, *Dickerson* and *Bethell*, before the Court to make them witnesses in their own cause, and they refusing to attend, one having been actually served with a subpœna, and the other running off to *Kentucky* to avoid the process of the Court.

These facts rendered it necessary to make a witness of Mr. *Robinson*.

These facts, say counsel, might have been the basis of a motion for an attachment for a contempt, or for a continuance; they might also have been made the basis of a motion for striking out the answers of those parties and rendering a judgment against them by default. 2 R. S. p. 96, § 299. And they are now in no worse condition than they would have been if their answers had been struck out, and a default taken for that cause.

The order of the Court that *Chester Bethell's* property should be exhausted before a levy could be made upon the property of the other defendants, was made upon the statute. 2 R. S. p. 186, §§ 674, 675. It is possible the Circuit Court may have committed an error in making this order. The same testimony which proves the plaintiffs' case, proves that *Chester Bethell* is the principal and the other parties are his sureties. If that be the relation of the parties, the order is just and equitable, and this Court will presume that it was made in the proper manner, and upon the application of the proper parties, if the record is silent upon those points.

But that order may be set aside without affecting the judgment. Indeed, it is expressly provided in § 675 above referred to, that those proceedings shall in no wise affect the interest of the plaintiff.

In conclusion, permit me to refer to the rules which control this Court in reviewing causes upon the weight of evidence.

All the evidence in thi  case was adduced by the appellees. The appellants offered none whatever.

In *Chase* v. *Kendall, supra*, this Court holds that "every reasonable intendment in favor of the verdict is to be indulged," &c. In *Kile* v. *Chapin*, 9 Ind. R. 150, this Court say, that "the finding of an inferior Court is not to be disturbed unless it is palpably wrong."

The verdict and judgment in this case being palpably right, the appellees not only ask that it be affirmed, but that damages be assessed pretty liberally in their favor.