MARY A. SENNOTT, Administratrix of William C. Stookey, deceased, Appellant, *v.* HORNER & HYPES, Appellees.

APPEAL FROM MONROE.

A promise by a debtor to pay a note "when he can make a raise," is not a conditional promise.

A verbal promise to pay a note previously given, has the same effect, as regards the statute of limitations, as a re-delivery of the note; and the note is good for the same period that it would be, if it were dated on the day of the new promise.

THIS suit was brought before the County Court of Monroe, and appealed from that to the Circuit Court of said county, to recover against the estate of said deceased, $57.17, stipulated in a promissory note, due one day after date, and dated Nov. 14, 1838; also, a note for $12.68, due one day after date, and dated Nov. 14, 1838, with interest, to Horner & Hypes.

| 30 | 429 |
|---|---|
| 123 | 666 |
| 23a | 135 |
| 26a | 177 |
| 30 | 429 |
| 47a | 101 |
| 30 | 429 |
| 61a | 333 |
| 30 | 429 |
| 67a | 314 |
| 30 | 429 |
| 98a | 1615 |
| 30 | 429 |
| 209 | 1 23 |

The administratrix set up the statute of limitations in both counts. The plaintiff, to lay the foundation to read the notes in evidence, read the deposition of *Thomas Quick*, to prove a new promise, who stated on that point the following, to wit : "I told him (Stookey), in 1846 or 1847, that Mr. Horner had placed them (*i. e.* these notes) in my hands for collection, and I informed him of the character and amount of them, and requested him to pay them. Mr. Stookey stated to me that he was not able to pay them, but if Mr. Hypes would hold on until he could make a raise, he would pay." That at another time in Belleville he told him (Quick) substantially the same.

Plaintiff read said notes to the jury, by leave of the court.

Plaintiff also introduced one *H. F. Hurckler*, who testified that he knew Wm. C. Stookey in his lifetime; that he considered him good for his debts, but that he was not familiar with his liabilities, nor whether his property was incumbered or not.

Defendant introduced *Ambrose Horner*, who testified that he was clerk of the County Court, etc., and that it appeared by the record of said court (which he held in his hand) that the estate of Wm. C. Stookey was insolvent to the amount of ten per cent. That it would pay ninety per cent. on the dollar.

The plaintiff asked the following instruction, which was given to the jury :

If the jury believe, from the evidence, that in 1846 or 1847, William C. Stookey promised Thomas Quick, as the attorney for the plaintiff, to pay these notes when he could make a raise, then the jury should find for said plaintiff the amount due on the notes, including principal and interest.

To the giving of which, the defendant at the time excepted.

The defendant asked the court to give the following instructions, which were refused :

That if the jury believed, from the evidence, that the notes in question were made in 1838, they were barred by the statute of limitations before the suit was commenced ; but the said notes are such considerations as will support a new promise in avoidance of the bar. And if you believe, from

the evidence, that Stookey promised only on condition, to wit, "that when he made a raise he would pay," then before you can find a verdict for the plaintiff, you should be satisfied, from the evidence, that Stookey had made a raise as referred to in his promise to Quick.

The errors assigned are:

The court erred in giving plaintiff's instruction.

The court erred in rendering judgment for the plaintiff on a promise made in 1846 or 1847, the same not being in writing.

H. K. S. O'MELVENY, for Appellant.

I. On the writings obligatory in this case, an action was barred for recovery on them after 15th November, 1854. Section 4, Statute of Limitations, (2 Purple, 720.) The action is barred. 19 Ill. 191.

A payment within or after the sixteen years, only takes it out of the operation of the bar by that section.

II. With a view of recovery, plaintiff proved that Stookey, in 1846 or 1847, said to the attorney of Hypes: "I am not able to pay them now, but if Mr. Hypes will hold on until I make a raise, I will pay."

The statute of limitations of our State does not, in terms, make a new promise, as it does a payment, a removal of the bar.

If by construction the bar is removed by a new promise, how can it be said to remove the operation of the statute, by virtue of a promise of payment seven or eight years before the bar could have attached to the contract?

The recovery is now sought for upon a new promise, based upon the moral obligation of the old debt, as the consideration of the new promise.

But it is submitted that in 1846 or in 1847, when that promise was made, the writings were in full force, and it was not then a naked moral obligation, but a subsisting, legal, existing liability and obligation, and no moral obligation, distinct from he legal obligation, existed to support the new contract, as its consideration.

If the new promise is the foundation of this action, then it is insisted that the same, although it were based upon a valid consideration to support it, is barred in five years from the making of the new promise, the same not being in writing. Sections 18 and 21, Laws 1849, (2 Purple, 731.)

III.   But the promise was not absolute, but conditional.   If Hypes would hold on until Stookey made a raise, *i. e.* was in a condition (pecuniarily) to pay, etc.   The instruction given for plaintiff ignores this condition, and excludes the consideration of the evidence from the jury on that point.   The facts proved, whether sufficient or not, to show that the conditions were complied with, or had occurred, were for the jury to determine, and not the court.   2 Parsons on Contracts, 348.

The instruction of defendant should have been given, to explain plaintiff's instructions, to prevent the jury from being misled by the instruction as given for plaintiff.   23 Ill. 380.

WALKER, J.   It is not the evidence of the promise, that is questioned in this case, but the effect of the promise.   The assignment of errors questions the correctness of the decision of the Circuit Court, in giving plaintiff's, and in refusing to give defendant's instructions.   The former announce to the jury that the promise was unconditional, and took the case out of the operation of the statute of limitations, whilst the latter assert that it is a question for the determination of the jury, whether it was conditional or not, and if they should find it conditional, it would constitute a bar, unless it appeared that the condition had been performed.   The evidence of the new promise not being questioned, it was for the court to determine its legal effect.   This was done in plaintiff's instructions, in accordance with the decision of this court, on the same facts, where the case was previously determined.   27 Ill. 13.

After having carefully reviewed the law as applicable to the facts in this case, we are unable to perceive any reason to change or modify the conclusion at which we then arrived. Nor do we deem it necessary to again discuss the question, whether or not the promise was unconditional.

It is, however, urged on this trial, that as the new promise

was not in writing, it was barred in five years, the period then limited to sue upon verbal agreements. (See 2 and 5 Laws 1849, p. 37.) The correctness of this position depends upon the effect to be given to that promise. If the effect of such a promise, is the same as though the note to which it relates was then delivered for the first time, or as a new instrument, then the period which bars suits on such instruments, can alone form a new bar. If, on the contrary, the promise is to be regarded merely as verbal, and to be considered without reference to the instrument to which it relates, then the statute limiting verbal agreements must govern.

If the evidence of the indebtedness had rested alone on verbal evidence, then a new promise of the same character, would clearly be governed by the same act of limitation as the former. Had this note been written and dated as it is, but not delivered until the time the new promise was made, no one would for a moment doubt that it would run for the same period of time as though it bore date on the day of its delivery. Or if it had been paid and taken up at its maturity, and afterwards put into circulation by the maker, that it would have produced precisely the same effect. In each of these cases, it is the delivery which rejuvenates the instrument. No reason in principle or justice is perceived, why deliberately promising to pay a note already delivered, should not have the same effect as a re-delivery to the holder. The original indebtedness, in all these cases, forms the consideration to support the promise, and to recover against a plea of the statute, parol evidence must be resorted to, for the purpose of showing when the promise was made, whilst the instrument itself shows the terms of the agreement in other respects. We have been referred to no authority, nor have we been able to find any, announcing a different rule. This construction seems to comport fully with justice, and can work no wrong. When the new promise to pay the note was made, it operated as a re-delivery at that date, and must be governed by the same rules as though it then came for the first time into existence. No error is perceived in this record, and the judgment of the Circuit Court must be affirmed.

*Judgment affirmed.*