## MORRIS KALLENBACH, JR.

### *v.*

## ELIADA DICKINSON.

*Filed at Springfield September 30, 1881.*

1.    LIMITATIONS—*partial payment—implied new promise therefrom— joint debtors—partial payment by one—effect as to co-debtor.*    In order to remove the bar of the Statute of Limitations in respect to a debt, there must be a new promise to pay the debt.    But to bind a party to a new promise there must exist the elements essential to a new contract, express or implied. There must be such circumstances as will reasonably authorize an inference of an intention to waive the bar of the statute.    There must be affirmative action or conduct designed to prospectively affect the rights of the parties to the prior contract.

2.    This new promise may be implied from the fact of a partial payment made after the bar of the statute has become complete, by the party originally chargeable.    But in order to authorize the inference of a new promise from the fact of such payment, the party making the payment, and sought to be charged thereby, must have had an affirmative intention in making the payment, and that it should be applied to the particular debt.

3.    In respect to the effect to be given to the making of a partial payment, as authorizing the inference of a new promise, payment before the bar is complete, thereby arresting the running of the statute so that it shall commence to run anew, and payment afterward, whereby the bar of the statute is removed, rest upon precisely the same principle.    In either case, if the running of the statute is arrested, or if the bar already complete is removed, it is because of the new promise, express or implied, and it is that new promise,—*i. e.,* contract,—resting upon the consideration of the old debt, where the statute is pleaded, that is replied to take the case out of the statute.    In either case the same elements of contract must exist.

4.    It is doubtless the law that joint debtors, in matters respecting their joint indebtedness, may, to a certain extent, bind each other by their admissions,—but this can only be as to facts affecting rights or remedies then

existing. The admissions must relate to matters showing what are the terms of a contract already made, or whether it has been performed or otherwise discharged. The idea, however, can not be sanctioned, that a co-debtor, merely because he is such, has authority to bind his associates to a *new contract*, although it may be in regard to the old debt.

5. In the case of joint debtors, therefore, a partial payment by one, without the knowledge or assent, or subsequent ratification, of the others, will not operate to bind the latter so as to authorize the inference of a new promise on their part, and therefore will not affect the defence of the. Statute of Limitations as to them.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

. Mr. E. S. McDONALD, and Messrs. CREA & EWING, for the appellant:

Partial payment by one of the joint makers of a note binds the other maker, although a surety, within the spirit of the Statute of Limitations. The payment being for the benefit of all, must bind all. *Whitcomb* v. *Whiting*, 2 Doug. 652.

This was the English rule, until it was recently changed by act of Parliament. Counsel cited the following American authorities adhering to the English rule: *Shepley* v. *Waterhouse*, 22 Me. 497; *Dinsmore* v. *Dinsmore*, 21 id. 433; *Colburn* v. *Averill*, 30 id. 310; *Joslyn* v. *Smith*, 13 Vt. 353; *Wheelock* v. *Doolittle*, 18 id. 440; *Carlton & Manning* v. *Ludlow Woolen Mills*, 27 id. 496; *White* v. *Hale*, 3 Pick. 291; *Sigourney* v. *Drury*, 14 id. 387; *Bissell* v. *Adams*, 35 Conn. 299; *Beardsley* v. *Hall*, 36 id. 270; *Perkins* v. *Barstow*, 6 R. I. 505; *Merritt* v. *Day*, 38 N. J. 32; *Ellicott* v. *Nichols*, 7 Gill, 85; *Schindel* v. *Gates*, 46 Md. 604; *Warner* v. *Wardell*, 1 Del. Ch. 49; *Blair* v. *Young*, S. C. Law Rep. (Hill,) part 2, vols. 2 and 3, in our page 112; *Goudy* v. *Gillam & Smith*, 6 Richardson, 28; *Morgan* v. *Metoyer*, 14 La. Ann. 612; *Hicks et al.* v. *Lusk & Co.* 19 Ark. 692; *Craig* v. *Calloway*, 12 Mo. 94; *McClurg* v. *Howard*, 45 Mo. 365; *Dickerson* v. *Turner*, 12 Ind. 223.

Mr. IRA J. BLOOMFIELD, for the appellee:

A partial payment on a joint and several promissory note by one of the several makers, will not prevent the running of the Statute of Limitations as to the others.   *Hance* v. *Hair*, 25 Ohio St. 349; *Shoemaker* v. *Benedict*, 11 N. Y. 176; *Bell* v. *Morrison*, 1 Pet. (U. S. S. C.) 612; *Steele* v. *Soule*, 20 Kan. 39; *Mayberry* v. *Willoughby*, 5 Neb. 368; *Yandes* v. *Lefavour*, 2 Blackf. 371; *Watson* v. *Woodman*, 15 Moak, (English) 572; *Coleman* v. *Forbes*, 22 Pa. St. 156; *Clark* v. *Burns*, 86 id. 502; *Van Keuren* v. *Parmelee*, 2 N. Y. 523; *Exchange Bank* v. *Sullivan*, 6 N. H. 124; *Kelley* v. *Sanborn*, 9 id. 46; *Whipple's Admrs.* v. *Stephens*, 22 id. 219; *Lowenthal* v. *Chappell*, 8 Ala. 353; *Myatts & Moore* v. *Bell*, 41 id. 222; *Foute* v. *Bacon*, 24 Miss. 156; *Buscoe* v. *Aukleet*, 28 id. 361; *Sigler* v. *Platt*, 16 Mich. 206; *Slowers* v. *Blackburn*, 21 La. Ann. 127; *Great* v. *Ashler*, 12 Ark. 762; *Wooddy* v. *State*, 12 id. 780; *Payne* v. *State*, 39 Barb. 639; *Graham* v. *Selon*, 59 id. 33; *Helm* v. *Cantrell*, 59 Ill. 524; *Goudy* v. *Gillam*, 6 Rich. (S. C.) 28; *Borden* v. *Pray*, 20 Ark. 293; *Belote's Exr.* v. *Wynne*, 7 Yerg. (Tenn.) 534; *Muse* v. *Donelson*, 2 Humph. 166; *Winchell* v. *Hick*, 18 N. Y. 558; *Tine* v. *Andrew*, 35 Me. 183.

Evidence that the principal, Wenzel, made payments upon the note in suit, does not sustain the issue tendered by the plaintiff's replication, that the defendants made payments. *Butcher* v. *Hexton*, 4 Leigh, (Va.) 519.

Payments made by the principal within sixteen years prior to suit, and before the right of action was barred by the statute, do not affect the defence of the statute by the surety.   *Shoemaker* v. *Benedict*, 11 N. Y. 176.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This case comes before us by appeal from a judgment of the Appellate Court for the Third District, affirming a judgment of the circuit court of McLean county.   The action

was assumpsit upon a promissory note, of which the following is a copy:

"$424.20.

"Two years after date, for value received, we promise to pay Morris Kallenbach or order four hundred and twenty-four 20-100 dollars, and ten per cent interest.

GOTTFRIED WENZEL,

June 3, 1861.　　　　　　　　　ELIADA DICKINSON."

Dickinson alone was served with process, and there was no appearance for the other defendant. Dickinson interposed the defence, by proper plea, that the cause of action did not accrue within sixteen years. The plaintiff replied that payments were made within sixteen years, and upon the issue thus formed the circuit court, upon trial, gave judgment for the defendant Dickinson.

Dickinson was in fact but a surety on the note, Wenzel being its maker and the principal debtor. Wenzel made several payments upon the note within the sixteen years, but these were neither expressly authorized by Dickinson before being made, nor ratified nor assented to by him afterwards. The question is, do the payments thus made afford sufficient evidence of a subsequent promise by Dickinson, to remove the bar of the Statute of Limitations as to him?

The Limitation act of 1845, upon which Dickinson relies, contains a clause providing that if any payment shall have been made, the period of limitation shall only run from that time forward. See Revised Statutes of 1845, p. 348, sec. 4. It does not say by whom such payment shall be made, nor as against whom only the period of limitation shall run, but leaves those questions to be determined by the principles of the common law. We do not regard the statute as asserting any new legal principle, but simply as enacting a principle of the common law that had been for many years applied by the courts in construing statutes of limitation. See Angell on Limitations, sec. 240, and notes.

In order that Dickinson shall be concluded by the payments of Wenzel, it must be determined that Wenzel was Dickinson's agent, not only for the purpose of liquidating the note by payment, but also for the purpose of doing what in legal estimation is necessary to make a new promise that will remove the bar of the statute.

The contention on behalf of the appellant is, that the statute recognizes what his counsel assume was the common law at the date of its enactment, namely: that any payment on a note after its maturity, by one of several joint makers, enables the holder to bring suit against all the makers within the original period of limitation after such payment is made, and hereon hinges the controversy.

That the statute recognizes what was in fact the common law on this question at the date of its enactment, is not, we think, fairly subject to controversy, but in our opinion, on reason, on the authority of the principles announced in decisions heretofore made by this court, and on the weight of modern decisions in other courts, and the authority of text writers, the common law rule was not as thus contended. The English courts generally, we admit, since the decision in *Whitcomb* v. *Whiting*, (Douglas, 652,) have held to that effect, and a number of the courts of our sister States have, following the ruling in that case, likewise so held. But the question has never been directly passed upon by this court, and since *Whitcomb* v. *Whiting* arose under the act of twenty-first James I, and was not decided until 1781, however persuasive an argument it may be as to what the common law was upon that question, it can not be conclusive upon us as an authority. We are free to inquire whether the reasoning by which it is supported is satisfactory, and to adopt or reject the rule it announces.

The entire opinion in *Whitcomb* v. *Whiting*, as delivered by Lord MANSFIELD, so far as relates to this question, is as follows: "Payment by one is payment for all, the one acting

virtually as agent for the rest; and in the same manner an admission by one is an admission by all, and the law raises the promise to pay when the debt is admitted to be due."

The doctrine that the law raises a promise to pay from the mere act of admitting a debt to be due, alone, was in harmony with the prior decisions of the English courts. *Freeman* v. *Fenton*, Cowp. 548; *Bryan* v. *Horseman*, 4 East, 599; *Lawrence* v. *Worrall*, Peake, 93; *Beecher* v. *Harney*, 4 East, 599, N. C.; *Clark* v. *Brashall*, 3 Esp. 155.

It is said by the learned editors of Smith's Leading Cases, vol. 1, part 2, notes to *Whitcomb* v. *Whiting*, in speaking of that case: "But in truth this decision was based on a conception which, though inconsistent with the letter and spirit of the statute, prevailed for more than a century in the courts of justice, that if the presumption of payment arising from the lapse of time was rebutted by the acknowledgment or confession of the defendant, the end which the legislature had in view was sufficiently attained, and the plaintiff might recover without proving a cause of action within six years. It followed, as a necessary consequence, that if the debt was confessed to exist by any one competent to make such an admission, the acknowledgment would be equally good whether his authority did or did not extend to making a new contract, and as the admissions of one co-contractor are evidence against another, a payment or acknowledgment by either was, when viewed in this aspect, a good answer to the plea of the statute by both. *Davidson* v. *Turner*, 12 Ind. 223; *post*, vol. 2, *Bowerman* v. *Radenius*. The authority of the principal case continued to prevail after the principle on which it proceeded had been laid aside, and it was, until recently, the established rule in England that a joint debt may be revived by one of the contractors without the consent of the rest, and notwithstanding an express disclaimer on their part."

This court has uniformly adopted a different construction of the statute, and held that the mere confession or admis-

sion of a debt to be due, is not alone sufficient to remove the bar of the statute.    Thus, in *Ayers* v. *Richards*, 12 Ill. 148, it was said : "In order to take a case out of the Statute of Limitations, there must be a promise to pay the debt.    Such promise may be implied, it is true, from an unqualified admission that the debt is due and unpaid, nothing being said or done at the time rebutting the presumption of a promise to pay.    It is not sufficient that the debtor admitted the account to be correct, or that he had received the goods or the money, or had executed the note sued on, but he must have gone further, and admitted that the debt was still due and had never been paid.    The bare admission of the correctness of the account or genuineness of the note sued on, is no more a satisfactory answer to the statute than would be the testimony of a witness proving the same facts.    The statute presupposes the debt to have been due, and that there is no evidence that it has ever been paid.    It would be absurd to say, that a promise shall be implied by the bare admission of the party of what the law itself supposes to be true."

Again, in *Norton* v. *Colby*, 52 Ill. 202, it was said : "On this whole subject (*i. e.*, the construction of the Statute of Limitations) a just reaction has taken place against the rulings of Lord MANSFIELD, which went so far to neutralize the beneficial purposes of the law.    The modern doctrine, as laid down by this court in *Parsons* v. *Northern Illinois Coal and Iron Co.* 38 Ill. 433, is, that there must be either an express promise, or a conditional promise with performance of the condition, or such an unconditional admission of the justice of the debt as fairly to imply an intention and promise to pay."    See, also, *Kimmel* v. *Schwartz*, Breese, 278 ; *Keener* v. *Crull et ux.* 19 id. 189 ; *Carroll et al.* v. *Forsyth*, 69 id. 127 ; *McGrew et al.* v. *Forsyth*, 80 id. 596.

And so in *Lowery* v. *Gear*, 32 Ill. 383, where the question arose as to the sufficiency of certain credits indorsed upon Gear's note by Brown, the original payee, to establish a new

promise, it was said: "There must be an actual, affirmative intention to make a payment on the note, before we can infer the promise. It is a general rule, no doubt, that where a debtor makes a payment without designating to which of several claims it shall apply, the creditor may apply it to which he pleases; but this could not authorize Brown to so apply it as to bind Gear by an implied new promise, without the actual intention of Gear to make such a promise. This was a matter in which Gear must have had an affirmative intention, before he could be bound. His volition was indispensable in order to bind him. If he had no thought or intention one way or the other, even then he could not be held to have made a new promise, for to do that he must have had an affirmative intention."

A parol promise reviving a debt, has the same effect as payment, under the statute. It revives or renews the debt so that the period of limitation commences anew to run from the date of the promise. In the case of a promissory note, it operates as a new delivery of the note. *Sennott, Admx. etc.* v. *Horner et al.* 30 Ill. 429. In practical effect the parol promise, or the payment, operates as the creation of a new debt of the same character or dignity as the old.

In *Keener* v. *Crull et ux.* 19 Ill. 189, it was said: "The statute bars the action and all remedy for recovery of the debt, and when the bar is complete, the statute being interposed in defence, no action for the recovery of the debt can be maintained. The debt, however, is not annihilated, and remains the same as before, excepting that all remedy for enforcement of the obligation is gone. The debt constituting an unquestioned moral obligation, is, however, a good consideration to support a promise to perform that obligation, and a new promise, based upon this moral obligation, is binding upon the debtor in avoidance of the bar of the statute. * * * Were this a new question, we should hold that the action could alone be brought upon the new promise.

But the current of authority and long usage sanction the practice of declaring upon the original cause of action and of replying the new promise."

In effect, then, *Whitcomb* v. *Whiting* has been repudiated by the decisions of this court, because they rest upon principles inconsistent with that decision. *Whitcomb* v. *Whiting* asserts no authority in a joint contractor to make a new contract, but merely that he has authority to admit that a prior contract exists, while we hold that to bind a party to a new promise there must exist the elements essential to a new contract, express or implied. There must be such circumstances as reasonably authorize an inference of an intention to waive the bar of the statute. There must be affirmative action or conduct designed to prospectively affect the rights of the parties to the prior contract. *Whitcomb* v. *Whiting* infers a new promise from the mere admission of the existence of a past contract, which doctrine this court repudiates.

It is, doubtless, the law that joint debtors, in matters respecting their joint indebtedness, may, to a certain extent, bind each other by their admissions; but this can only be as to facts affecting rights or remedies then existing. The admissions must relate to matters showing what are the terms of a contract already made, or whether it has been performed or otherwise discharged. There can be no foundation in cases decided heretofore by this court, nor, as we think, in reason, for asserting that two or more parties, by the simple act of becoming joint debtors, empower each other to act as their respective agents, any further than may be necessary to consummate that contract, which is only to pay or discharge the debt. To that extent all are bound, and there the duty and liability of each terminates. Each may, doubtless, affect the other by making admissions that would be competent evidence against him to the purport that the debt had not been paid or discharged, etc., but we are aware of no principle of law which sanctions the idea that a

co-debtor, merely because he is such, has authority to bind his associates to a new contract, although it may be in regard to the old debt.

We have held, even in the case of partners (in most respects a much stronger case than that of mere joint debtors), that after dissolution a single member can not bind the firm by giving a promissory note or accepting a bill of exchange in the firm name, and this for the reason that the dissolution of the partnership operates as a revocation of all authority for making new contracts. *Bank of Montreal* v. *Page*, 98 Ill. 109. If one of two joint debtors, however, without other authority than that arising from their being such, could make new contracts binding on all, then the dissolution could make no difference, for they are, at least, still joint debtors as to the firm debts, after dissolution.

In *Helm* v. *Cantrell et al.* 59 Ill. 524, it was held that a promissory note given by one partner, after the dissolution of the firm, for a firm debt which had been barred by limitation, did not revive the debt as to the other members of the firm. This would seem to be conclusive against the power of one joint debtor, by contract, express or implied, to revive the debt as to his co-debtor, for there is no reason for pretending that the form in which the debt is revived can make any difference. The note is not binding, for the reason that there is no power to contract to revive the debt, and not because there is no power to execute a promissory note, simply.

The only theory upon which the present case can be maintained is, each joint debtor owes the duty of satisfying or liquidating the debt. Payment by one is payment for all, because it satisfies or liquidates, *pro tanto*, the debt, and therefore, from the mere fact that so much of the debt is liquidated, the law steps in and implies a contract binding upon all, as well upon those who know nothing in regard to the payment, and have done nothing to cause it to be made, and can therefore have had no intention or volition in the matter, as upon

those who made the payment and who did have intention and volition in regard to it,—in other words, because the debt has been partially liquidated or discharged, the law charges and binds all the original debtors, without regard to their actual knowledge of or participation in the act causing the partial liquidation or discharge, as having at that date, for a sufficient consideration, each promised anew to pay the debt, and in this view it would manifestly be unimportant whether such partial liquidation or discharge should be by reason of a direct payment upon the specific debt, or by reason of a payment on general account.

But, as we have seen in *Lowery* v. *Gear, supra,* the doctrine of this court is, a party, to be bound to a new promise by the fact of payment, must have had an affirmative intention in making the payment, and so, whatever may be the legal inference as against the party who actually made the payment, it is impossible that a promise to pay the residue of the debt can be implied from the ignorance and want of intention of the party who neither made nor knew of the payment, nor had any sort of volition in the matter.

*Whitcomb* v. *Whiting* has been approved and followed by the courts of Massachusetts, Connecticut, Vermont, Virginia, North Carolina, Maine, New Jersey, Rhode Island, Delaware, and, it may be, of some other States, but in the main without giving any reasons therefor other than that of *stare decisis.* It has been repudiated and overruled in Pennsylvania, New York, New Hampshire, Indiana, Ohio, Kentucky, Tennessee, Alabama, Kansas, Nebraska and Florida, and also by the Supreme Court of the United States. And it seems in Maryland, Georgia, Arkansas, and North and South Carolina, an intermediate view prevails, under which it is held an acknowledgment by one of several joint contractors will suspend the running of the statute as against the rest, but can not revive their liability after it has once been extinguished.

In *Bell* v. *Morrison*, 1 Peters, 351, the question was, whether, as to a debt of a firm barred by Statute of Limitations, the promise of a partner after dissolution could remove the bar as to the other partners. The case arose under the Limitation law of Kentucky, and was decided at the January term, 1828, of the Supreme Court of the United States. After quoting the opinion in *Whitcomb* v. *Whiting*, Mr. Justice Story, who delivered the opinion of the court, said: "This is the whole reasoning reported in the case, and is certainly not very satisfactory. It assumes that one party who has authority to discharge, has, necessarily, also authority to charge the others,—that a virtual agency exists in each joint debtor to pay for the whole, and that a virtual agency exists, by analogy, to charge the whole. Now, this very position constitutes the matter in controversy. It is true that a payment by one does inure for the benefit of the whole; but this arises not so much from any virtual agency for the whole, as by operation of law, for the payment extinguishes the debt. If such payment were made after a positive refusal or prohibition of the other joint debtors, it would still operate as an extinguishment of the debt, and the creditor could no longer sue them. In truth, he who pays a joint debt pays to discharge himself, and so far from binding the others conclusively by his act, as virtually theirs also, he can not recover over against them in contribution, without such payment has been rightfully made, and ought to charge them. When the statute has run against a joint debt, the reasonable presumption is that it is no longer a subsisting debt, and therefore there is no ground on which to raise a virtual agency to pay that which is not admitted to exist. But, if this were not so, still there is a great difference between creating a virtual agency, which is for the benefit of all, and one which is erroneous and prejudicial to all. The one is not a natural or necessary consequence from the other. A person may well authorize a payment of a debt for which he is now liable,

and yet refuse to authorize a charge where there at present exists no legal liability to pay.   Yet if the principle of Lord MANSFIELD be correct, the acknowledgment of one joint debtor will bind all the rest, even though they should have utterly denied the debt at the time when such acknowledgment was made."

Again he says: "We think the proper resolution of this point depends upon another, that is, whether the acknowledgment or promise is to be deemed a mere continuation of the original promise, or a new contract, springing out of and supported by the original consideration.   We think it is the latter, on both principle and authority; and if so, as after the dissolution no one partner can create a new contract binding upon the others, his acknowledgment is inoperative and void as to them.   *   *   *   The revival of a debt supposes that it has been once extinct and gone,—that there has been a period in which it had lost its legal use and validity.   The act which revives it is what essentially constitutes its new being, and is inseparable from it.   It stands not by its original force, but by the new promise, which imparts validity to it.   Proof of the latter is indispensable to raise the assumpsit on which the action can be maintained.   It was this view of the matter which first created the doubt whether it was not necessary that a new consideration should be proved to support the promise, since the old consideration was gone.   That doubt has been overcome, and it is now held that the original consideration is sufficient, if recognized, to uphold the new promise, although the statute cuts it off as a support for the old.   What, indeed, would seem to be decisive on this subject is, that the new promise, if qualified or conditional, restrains the rights of the party to its own terms, and if he can not recover by those terms he can not recover at all.   If a person promise to pay upon condition that the others do an act, performance must be shown before any title accrues."

And again he says: "The light in which we are disposed to consider this question is, that after a dissolution of a partnership no partner can create a cause of action against the other partners except by a new authority, communicated to them for that purpose. It is wholly immaterial what is the consideration which is to raise such cause of action, whether it be a supposed preëxisting debt of the partnership, or any auxiliary consideration which might prove beneficial to them. Unless adopted by them they are not bound by it. When the Statute of Limitations has once run against a debt, the cause of action against the partnership is gone. The acknowledgment, if it is to operate at all, is to create a new cause of action,—to revive a debt which is extinct,—and thus to give an action which has its life from the new promise implied by law from such an acknowledgment, and operating and limited by its purport. It is, then, in its essence, the creation of a new right, and not the enforcement of an old one. We think that the power to create such a right does not exist, after a dissolution of the partnership, in any partner."

We have quoted thus at length from this case because it may be regarded as the leading case in opposition to *Whitcomb* v. *Whiting*, and because, also, we believe the opinion to contain a forcible and accurate view of the law.

The effect of this case, as an authority, is sought to be somewhat impaired by the statement that it arose upon the statute of Kentucky, and was decided as it was because of the authority of the decisions of the Kentucky courts. So far as the opinion purports to be governed by the expositions of the law by the Kentucky courts, it has been referred to by this court approvingly in *Keener* v. *Crull et ux.*, *Carroll et al.* v. *Forsyth*, and *Norton* v. *Colby*, *supra*.

So far as affects the present question, Mr. Justice STORY in the opinion says: "The Kentucky decisions present no authority directly in point," and he proceeds to reason the question out on principle.

In *United States* v. *Wilder*, 13 Wallace, 254, it was held that when a debtor admits a certain sum to be due by him, and denies that a larger sum claimed is due, a payment of the exact amount admitted can not be converted by the creditor into a payment on account of the larger sum denied, so as to take the claim for such larger sum out of the statute.

In the *Exeter Bank* v. *Sullivan*, 6 N. H. 124, decided at the March term, 1833, a like view of the law as that in *Bell* v. *Morrison* was announced by the Supreme Court of New Hampshire. In that case, RICHARDSON, J., in delivering the opinion of the court, said: "If one joint debtor admits that he owes the debt, and says nothing to the contrary, it may be inferred from his silence that he is willing to pay; but his silence can furnish no ground to presume that another who is absent is willing to pay." This was followed, in the same State, by *Kelly* v. *Sanborn*, 9 N. H. 46, and *Whipple* v. *Stevens*, 2 Foster, (N. H.) 219.

The Supreme Court of Pennsylvania, in *Levy* v. *Cadet*, 17 S. & R. 126, decided at the December term, 1827, held that payment on account, or an acknowledgment, by one of two or more joint debtors, will not take the case out of the statute as to the others, and this has been followed, in the same State, by *Coleman* v. *Forbes*, 10 Harris, (22 Pa. St.) 156, *Searight* v. *Craighead*, 1 Pa. (Penrose & Watts) 135, *Houser* v. *Irvine*, 3 W. & S. 345, *Shoneman* v. *Fegley*, 7 Barr, (Pa. St.) 433, and *Bush* v. *Slowell*, 71 Pa. St. 208.

The Supreme Court of Indiana, in *Yandes* v. *Lefavour*, 2 Blackford, 371, (decided at their December term, 1830,) following *Bell* v. *Morrison*, held that an acknowledgment of a debt made by one partner, after the dissolution of the partnership, is not sufficient to take a case out of the Statute of Limitations as to the others.

It is claimed, however, that this case is overruled by *Dickerson* v. *Turner*, 12 Ind. 223. This is a misapprehension. In that case the court follow *Whitcomb* v. *Whiting* only to the

extent that an admission by one of two joint debtors is an admission by all, but say: "The doctrine of *Whitcomb* v. *Whiting*, so far as it holds an admission by one to be sufficient to take a case out of the Statute of Limitations, has been controverted in this country, and it has been overruled by the Supreme Court of the United States, by the Court of Appeals of New York, and by the Supreme Court of this State at an early day," and then, after referring to the cases, it is added: "The modern and more correct doctrine is, that it is the new promise, as such, supported by the original consideration, that takes the case out of the statute, and not the new promise, viewed merely as an admission of the debt. * * * Such new contract neither a joint contractor nor a partner, after the dissolution, has power to make so as to bind his co-contractor or co-partner."

By the Revised Code of Alabama, sec. 2914, it is enacted that "no act, or promise, or acknowledgment is sufficient to remove the bar to a suit, or is evidence of a new and continuing contract, except the partial payment made upon the contract by the party sought to be charged, before the bar is complete, or an unconditional promise in writing, signed by the party to be charged thereby."

We do not think, so far as the effect of a partial payment is concerned, this statute differs essentially from a proper construction of ours. Ours, it is true, does not say that the partial payment must be made by the party sought to be charged, but this very clearly is its effect. A stranger—one owing no duty to pay—certainly can not make a payment. It can only be by one owing a duty to pay. Indeed, the whole contention on the part of the plaintiff here concedes this. He contends Dickinson is bound, not because payment can be made by anybody which would be binding upon him, but because, in legal effect, payment by his principal is payment by himself, and this being so, a new promise by Dickinson is to be inferred as a matter of law.

The Supreme Court of Alabama, in *Lowther et al.* v. *Chappell,* 8 Ala. 353, held, under this section, "a payment by one of several joint debtors, before the statute has completed a bar, will not prevent the completion of the bar as to the others, at the expiration of the time within which the statute required suit to be brought on the original evidence of debt, relied on to sustain the action." This was followed in the same court by *Myatts & Moore* v. *Bell,* 41 id. 222; *Knight* v. *Clements,* 45 id. 89.

In *Beloit's Exrs.* v. *Wayne,* 7 Yerger, 534, decided at the March term, 1835, the Supreme Court of Tennessee followed the doctrine of *Bell* v. *Morrison,* and this has since been followed by *Muse* v. *Donelson,* 2 Humph. 166.

In *Palmer* v. *Dodge,* 4 Ohio St. 21, the same result was reached by the Supreme Court of Ohio.

More recently, in Kansas, Nebraska and Florida, the doctrine of *Whitcomb* v. *Whiting* is repudiated, and that of *Bell* v. *Morrison* followed. *Steele* v. *Soule,* 20 Kan. 39; *Mayberry* v. *Willoughby,* 5 Neb. 368; *Tate* v. *Clements,* 16 Fla. 339. Like reasoning will also be found in *Stette* v. *Jennings,* 1 McMullen, (S. C.) 297; *Foute* v. *Bacon,* 24 Miss. 156; *Briscoe* v. *Auketell,* 28 id. 361.

The earlier decisions in New York followed *Whitcomb* v. *Whiting.* See *Johnson* v. *Beardslee,* 15 Johnson, 3; *Patterson* v. *Choate,* 7 Wend. 441. But in 1849 the Court of Appeals of that State, in *Van Keuren* v. *Parmelee and others,* overruled these cases after an able review of the authorities, and held that the presumed agency of a partner ceases with the dissolution of the firm, and that after dissolution an acknowledgment or promise to pay by one of the partners will not revive a debt against the firm which is barred by the Statute of Limitations. In the opinion, which was by BRONSON, J., it is, among other things, said, after quoting the opinion in *Whitcomb* v. *Whiting:* "Nothing but the great name of Lord MANSFIELD could have given currency to this reasoning. It

is plain enough that 'payment by one is payment for all,' so far as relates to the satisfaction of the debt; but that fact neither shows, nor has it any tendency to show, a new promise or acknowledgment by the other joint debtors. Payment is nothing more than an admission that the debt is due, and like any other admission it can only affect the party who makes it, unless he has authority to speak for others as well as himself. A joint debtor has no such authority. It can not be justly inferred from the relation which he sustains to the other joint debtors; and though he may conclude himself by an admission he can not conclude them. His Lordship, after saying that 'payment by one is payment for all,' adds, 'the one acting virtually as agent for the rest.' If the meaning be that there is such an agency as will make the payment by one inure to the benefit of all the other joint debtors, the reasoning is well enough, but it proves nothing on the point in controversy. If the meaning be that one joint debtor is the agent of the others for the purpose of making admissions to bind them, that was assuming the very point to be proved, and the assumption had neither authority nor argument to support it. There is nothing in the relation of joint debtors from which such an agency can be inferred. A joint obligation is the only one which links them together, and from the nature of the case payment of the debt is the only thing which one has authority to do for all."

This case was followed by *Shoemaker* v. *Benedict*, 1 Kernan, (11 N. Y.) 176, in which it was held, payments made by one of the joint and several makers of a note, and indorsed upon it, before an action upon it is barred by the Statute of Limitations, and within six years before suit brought, do not affect the defence of the statute as to the others. And still more recently, in *Winchell* v. *Hicks*, 4 Smith, (18 N. Y.) 558, the same doctrine is reasserted and enforced.

Chancellor Kent, in the third volume of his Commentaries, (8th ed.) 55,* 50, after alluding to the doctrine of *Whitcomb*

v. *Whiting*, says : "Of late, however, the decision in *Whit-comb* v. *Whiting* has been very much questioned in England, and it seems now to be considered an unsound authority by the court which originally pronounced it.   And we have high authority in this country for the conclusion that the acknowl-edgment by a partner, after the dissolution of the partnership, of a debt barred by the Statute of Limitations, will be of no avail against the statute, so as to take the debt out of it as to the other partner, on the ground that the power to create a new right against the partnership does not exist in any partner after the dissolution of it; and the acknowledgment of a debt barred by the Statute of Limitations is not the mere continuance of the original promise, but a new contract, springing out of and supported by the original consideration." What he says about the authority of *Whitcomb* v. *Whiting* in England is, perhaps, stronger than decisions made subse-quent to the time he wrote will justify, but in all other respects, we apprehend, he is correct.

Story, in his work on Partnership, sec. 324, speaking of this question, says : "In some of the States the English doctrine has been approved; in others it has been silently acquiesced in, or left doubtful; and in a considerable number it has been expressly overruled.   The Supreme Court of the United States have not hesitated, after a most elaborate dis-cussion, to overrule it, as unfounded in principle and analogy. In truth, the whole controversy must ultimately turn upon the single point whether the acknowledgment is a mere continua-tion of the original promise, or whether it is a new contract or promise springing out of and supported by the original con-sideration.   It is upon the latter ground that the Supreme Court have deemed the doctrine wholly untenable."

The learned editors of Smith's Leading Cases say that the rule under which an acknowledgment by one co-contractor will not take the debt out of the statute as against another, without some power other than that arising from the joint

nature of the obligation, is the more logical one. Notes to *Whitcomb* v. *Whiting*, vol. 1, part 2, (7th Am. ed.) p. 982.

Proffatt, in his notes to *Beitz* v. *Fuller*, 10 Am. Decis. 697, says: "It must be confessed that the later and better decisions show a strong preference for the rule, that except in cases of a subsisting partnership one joint debtor shall not have the power to deprive his co-debtors of the statute by his own promise or admission without their consent, and that in States where the contrary doctrine is established it seems to rest upon the principle of *stare decisis*, rather than upon sound reason."

The point is made in argument that payment before the bar is complete and payment afterwards, rest upon different principles, and therefore, although on the authority of *Bell* v. *Morrison* one joint contractor can not bind another by a payment after the bar is complete, he may do so by a payment before. It is true, in *Bell* v. *Morrison*, and in *Van Keuren* v. *Parmelee*, some stress is laid upon the fact that the debt is barred, and has therefore ceased to be obligatory, etc., but in principle it can make no difference. In either case, if the running of the statute is arrested, it is because of the new promise, express or implied; and it is that new promise,—*i. e.*, contract,—resting upon the consideration of the old debt, in either case, where the statute is pleaded, that is replied to take the case out of the statute. The same elements of contract must exist in either case.

This was the ruling in *Shoemaker* v. *Benedict, supra,* and in other cases to which it is unnecessary to refer. In that case, the judge pronouncing the opinion, among other things, said: "And, in principle, I see not why a promise made before the statute has attached to a debt should be obligatory when made by one of several joint debtors, when it would not be obligatory if made after the action was barred. The statute operates upon the remedy. The debt always exists. * * * The same authority is required to make the promise

before as after the six years have elapsed. Can it be said that one of several debtors can, on the last day of the sixth year, by a payment small or large, or by a new promise, either express or implied, so affect the rights of his co-debtors as to continue their liability for another space of six years without their knowledge or assent, or any authority from them, save that to be implied from the fact that they are at the time jointly liable upon the same original contract, and yet that on the very next day, without any act of the parties, such authority ceases to exist?"

Surely, the question can admit of but one answer.

Perceiving no error in the ruling of the Appellate Court, its judgment is affirmed.

*Judgment affirmed.*