### TRIDELL v. MUNHALL.

(Circuit Court, W. D. Pennsylvania. July 8, 1903.)

No. 30.

1. TRIAL—SENDING OUT PAPERS WITH JURY—PRACTICE.
    Where the plaintiff's statement of claim has been made the basis of the court's instructions, and virtually incorporated into them, it is no error to send it out with the jury when they retire to make up their verdict.

2. NEW TRIAL—EXCESSIVE VERDICT—EVIDENCE.
    A verdict of $6,000 for board, room, and care in sickness, furnished during a period of ten years, will not be disturbed as excessive, where, in addition to direct proof with regard to their character and value, the person to whom they were furnished had suggested $1,000 a year as that which he was willing to pay.

3. STATUTE OF LIMITATIONS—BAR OF, HOW REMOVED.
    Under the Illinois statute of limitation, which bars a simple debt after five years, it is sufficient, in order to remove the bar, to show an express promise to pay, or a conditional promise, with a performance of the condition, or an unconditional admission of the justness of the debt.

4. SAME—ACKNOWLEDGMENT—CONDITIONAL PROMISE TO PAY
    An acknowledgment is only effective because of the promise to pay which is implied in it, and the same is true of a payment on account. Where, therefore, either is accompanied by an express promise as to how the debt is to be paid, there can be no implication outside of it. The

¶ 4. See Limitation of Actions, vol. 33, Cent. Dig. § 609.

debtor, in waiving the statute, is entitled to make his own terms, and by these alone is he to be bound. A conditional promise to pay is not sufficient, therefore, although accompanied with an express acknowledgment and a payment on account, without proof that the condition has been fulfilled.

**5. SAME—PROMISE TO PAY OUT OF SPECIAL FUND.**

An Illinois debtor, whose debt was barred by the statute, after acknowledging that he had promised the plaintiff, if she would let him have a home with her, and his board, room, and care, that he would pay her well when he got the property that was coming to him from his father's estate, promised payment of the debt in the following terms: "And now I am glad to say the time has come when I am about ready to do so, and I will be able to do it; for my father has died, and the estate is being divided. I will have my portion, and have it soon. If you will be perfectly satisfied with that, I will pay you $10,000 from this money which is coming to me from my father's estate. I will pay you some of it now to go to Denver with, and the balance I feel sure that I will have by the time you get back, and I will pay it to you then." *Held* to be a conditional promise, on which the plaintiff was not entitled to recover, without proof that enough had been paid to him from his father's estate to make good his undertaking, or had at least been defined, if not actually set apart to him, by an account.

Rule for a New Trial. Also Rule for Judgment Non Obstante Veredicto on Reserved Point.

Jno. B. Chapman and A. C. Gettys, for plaintiff.
W. A. Way, for defendant.

ARCHBALD, District Judge.* According to the Pennsylvania practice, it is largely for the trial judge to say what papers shall go out with the jury, and the sending out of a declaration, and of a mechanic's claim with a bill of particulars attached, which amounts to the same thing, have been expressly sanctioned. Hall v. Rupley, 10 Pa. 231; Odd Fellows Hall v. Masser, 24 Pa. 507, 64 Am. Dec. 675. This may not be controlling on the federal courts, but it is at least suggestive, particularly as it is sustained by the general practice. Thus, in Shulse v. McWilliams, 104 Ind. 512, 3 N. E. 243, it was held permissible to allow the pleadings to go out; and in Bluedorn v. Pacific Railway, 121 Mo. 258, 25 S. W. 943, it was said to be within the discretion of the court to do so; while in McGinty v. Keokuk, 66 Iowa, 725, 24 N. W. 506, it was considered no error where the jury had been correctly instructed on the issues; and in Smith v. Holcomb, 99 Mass. 552, the sending out of an amendment to the writ increasing the damages claimed was allowed. In the present instance it was peculiarly important that the jury have the plaintiff's statement before them, not only because it showed the specific items of her claim, but because the charge of the court was directly based upon it. Going over it item by item, attention was called to the evidence bearing on each, and the discrepancies between the amounts proved and those claimed pointed out. Certain of them also were directed to be entirely disregarded, as being without evidence to sustain them. The statement was thus virtually incorporated into the charge, and it is difficult to see how the jury could have followed and applied their

* Specially assigned.

instructions without having it before them. I am not convinced that the discretion of the court in allowing it was wrongly exercised.

The jury gave a verdict which aggregated $6,000. This covered whatever was furnished by the plaintiff to the defendant in the way of board and services for a period of about 10 years, and on an average would amount to $600 yearly—an estimate which no doubt guided the jury, to a certain extent, in the verdict rendered. The question is whether this was warranted by the evidence. It must be confessed that the items of claim as set out in the declaration are open to the criticism made of them by the defendant's counsel, and, if there was nothing more in the case than the direct proof with regard to their character, extent, and value, the verdict could hardly be sustained. But in addition to this, such as it was, we have the testimony of several witnesses that the decedent himself put an estimate on what the plaintiff had done for him considerably in excess of the verdict, speaking of $1,000 per year, and inquiring of the plaintiff if that would be satisfactory. It is also to be remembered that the decedent had something more than his mere room and board; and, while it is shown that he did some little work at times as a waiter, it does not appear to have been very much, and the plaintiff meanwhile, with little hope of recompense, not only supplied him with the necessities of life, but gave him a home, nursing him and caring for him, whether able and inclined to work or not. If the witnesses are to be believed, the decedent intended that ultimately she should be paid for it, and paid well, and in the light of their testimony it cannot be said that the verdict is excessive. Six hundred dollars per year may be fully as much as the services rendered were worth, judged by what testimony we have with regard to them directly, but, taking all the evidence, I cannot see that it goes beyond all bounds. The amount was for the jury, and I do not feel called upon to disturb their verdict.

The rule for a new trial is discharged.

The real question in the case is raised by the reserved point. The action was brought July 5, 1902, and according to the law of Illinois, where the case arises, all of the plaintiff's claim over five years old was barred by the statute of limitations, unless the bar was removed by a new promise or a subsequent unambiguous acknowledgment or payment on account. Under the instructions of the court the jury separated that which they found due prior to July 5, 1897, from that which was subsequent, and their verdict as to the former was taken subject to the point reserved, whether as to that part of the claim there was any evidence sufficient to toll the statute. This question is to be determined by the local law, and the decisions of the Illinois courts are controlling. They are in a general way in line with those of other states, but by no means hold to the stringent rule which prevails in Pennsylvania. It is sufficient, in order to remove the bar, to show "an express promise to pay the money, or a conditional promise with a performance of the condition, or an unconditional admission of the justness of the debt." Parsons v. Northern Illinois Coal & Iron Company, 38 Ill. 430; Carroll v. Forsyth, 69 Ill. 127; Kallenbach v. Dickinson, 100 Ill. 427, 39 Am. Rep. 47. According to Wal-

dron v. Alexander, 136 Ill. 550, 27 N. E. 41, the acknowledgment and promise to pay, to be sufficient, must arise out of facts which identify the debt with such certainty as will clearly determine its character, fix the amount due, and show a present unqualified willingness and intention to pay it. And in O'Hara v. Murphy, 196 Ill. 599, 63 N. E. 1081, it was said that a promise by the defendant to pay the plaintiff every cent he owed him sufficiently identifies the debt in the absence of proof that there is any debt or account between the parties other than the one sued on. So in Ditch v. Vollhardt, 82 Ill. 134, where the debtor admitted that he owed about $1,500, but said he could not fix the precise amount until a settlement was had, and promised to pay a part at a date named, it was held sufficient. As to what is or is not to be regarded as a condition, the case of Horner v. Starkey, 27 Ill. 13 (s. c., sub nom. Sennott v. Horner, 30 Ill. 429), is instructive. It was there declared by the maker of certain promissory notes that if the payee would wait awhile he would pay them; that he was not in a condition to pay them then, but when he made a raise he would do so; and this was held to be an absolute promise. "If his language is properly reported," says Caton, C. J., "he meant to convey the idea that he would certainly pay the debt, but wanted further time to do so. * * * He did not intend to convey the meaning that he would pay only upon the condition that his circumstances should subsequently so improve as to place in his hands the means to do so." On the other hand in Mullett v. Shrumph, 27 Ill. 107, where the defendant said he would settle as soon as he got the money for certain work: "This," says the same learned justice, "was a conditional promise, and could neither serve for the foundation of an action itself, nor waive the statute of limitations, without at least proving that the defendant had received the money." So, in Boone v. A'Hern, 98 Ill. App. 610, a declaration by the defendant that he would pay if he had the money, and that when he got it he would do so, is not good without proof that the latter condition has been fulfilled.

These views are in accord with the general trend of the authorities. Thus, in Philips v. Philips, 3 Hare, 281, it is said by Wigram, V. C.:

"If a debtor simply acknowledges an old debt, the law implies from that simple acknowledgment a promise to pay for it, for which promise the old debt is a sufficient consideration. But if the debtor promises to pay the old debt when he is able, or by installments, or in two years, or out of a particular fund, the creditor can claim nothing more than the promise gives him."

This is quoted with approval in Shepherd v. Thompson, 122 U. S. 231, 7 Sup. Ct. 1229, 30 L. Ed. 1156, where the pledge of a claim against the government to secure a debt barred by the statute was held to exclude any implication of a personal promise to pay, provision having been made for payment in a particular way. So, in Hanson v. Towle, 19 Kan. 273, where there was a promise to pay as soon as the money could be realized by the defendant, an administrator, out of the estate which he represented, it was held that he was not bound to pay until he had done so. And in Shown v. Hawkins, 85 Tenn. 214, 2 S. W. 34, a promise to pay when the debtor had collected the amount due him from a specified source was held conditional, and not enforceable until it appeared that the contingency expressed had

happened. Even in Stowell v. Fowler, 59 N. H. 585, on which the plaintiff relies, where the debtor declared that he expected his mother to die, and if she died he would settle up the matter, the promise was regarded as at least contingent on his being in funds.

Enlightened by these authorities, let us look at the case in hand. The testimony principally relied upon by the plaintiff is that of C. J. Waring. He states, in substance, that he was present at a conversation in which the decedent, Harry Munhall, in June, 1901, eight months before his death, declared that he had had his board, room, care, and clothing from Mrs. Tridell for about ten years, and proposed to her to pay at the rate of $1,000 a year for it, if that would be satisfactory. In response to a question from the witness, he said that he had not paid her much during that time, because he had not been able to work, but that he had told her when they went into the house which she took on Paige street, Chicago, if she would let him have a home there, and his board and room and care, he would be able to pay her well for it, and would pay her when he got the property that was coming to him from his father's estate. " 'And now,' [to use the words of the witness], he says, 'I have been promising you that all along during these years, and * * * I am glad to say * * * the time has come * * * when I am about ready to do that, and will be able to do it, for my father has died and the estate is being divided. I will have my portion, and will have it very soon. * * * If you will be perfectly satisfied with that, * * * I will give you $10,000 from this money that is coming to me from my father's estate. I will pay you some of it now to go to Denver with, and the balance I feel sure that I will have by the time that you will get back, and will pay it to you then.'" The witness further says that within a few days after that he saw Munhall pay Mrs. Tridell $20, and a day or two later $20 more, stating at the time that it was on account of what he owed her. As an acknowledgment, this was certainly sufficiently specific and positive. The debt was identified, both in character and amount, and the intention of ultimately paying it was asserted, and in proof of that intention there was an actual payment on account. And while it is no doubt true, as declared in Hahn v. Gates, 102 Ill. App. 385, that something more than a mere acknowledgment is necessary, if the case rested on the sufficiency of it in the present instance I should not hesitate to hold that the bar of the statute of limitations had been removed. But an acknowledgment is only effective because of the promise to pay which is to be implied from it; and the same is true of a payment on account. Where, therefore, either is accompanied by an express promise as to how the debt is to be paid, there can be no implication outside of it. The debtor in waiving the statute is entitled to his own terms, and by these alone is he bound. It was accordingly held in Gillingham v. Brown, 178 Mass. 417, 60 N. E. 122, 55 L. R. A. 320, that, where the promise was to pay at the rate of $10 a month, a subsequent payment of $5 on account did not make the entire debt due, the creditor being confined to the installments as they accrued. It does not matter, therefore, in the present case how positive was the acknowledgment if there was a promise at the time expressing the intention of the decedent as to how

the debt was to be paid, and that there was, it seems to me, is clear. Manifestly the thing that prompted him to what he said and did was the death of his father and the inheritance which he expected from that source. Even the promise which he declared he had made to Mrs. Tridell when they moved into the Paige street house was that he would pay her well when he got the property that would be coming to him from his father's estate, and the same condition was reasserted in the conversation already detailed. "I have been promising you that all along during these years," he says, "and now I am glad to say * * * the time has come * * * when I am about ready to do that [not entirely so, be it noted]; for my father has died, and the estate is being divided. I will have my portion, and will have it very soon. * * * If you will be perfectly satisfied with that [submitting the question to the plaintiff], I will give you $10,000 from this money that is coming to me from my father's estate." This is not an absolute, but a contingent, promise, which cannot be enforced except upon proof that the contingency mentioned has happened. The reference to his father's estate is something more than an incident; it was his sole reliance, and his undertaking is made with express regard thereto. He promised to pay out of the money he was to receive from that source, and when he had received it. Neither his expectation of speedily getting it—as, for instance, by the time Mrs. Tridell had returned from Denver—nor the payment to her on account to assist her there, changes this phase of it. As reiterated by Waring at the very close of his testimony on cross-examination, it was to be paid when he got the money from his father's estate, and it could not be exacted from him, therefore, until he had. Were he living and suit were brought against him, he could well defend on this ground, and his administrator is not to be at any greater disadvantage; in fact, the evidence is to receive a stricter construction, if any, than if he were alive to deny or give his version of the transaction.

Nor is anything more favorable to be obtained from the plaintiff's other witnesses. According to Frank Wysox, her son, the decedent's declarations amounted to no more than an inflated expression of his intended gratuity when he succeeded to his expectations; while according to Mrs. Jenkins he merely said that "his father was dead, and he would soon come into his share, and would then pay her [the plaintiff] for all the care of the last ten years." This rather strengthens than relieves the contingent or conditional character of the promise relied upon, confirming the view to that effect derived from the testimony of the principal witness, Waring.

If, then, the promise was conditional, as the contingency upon which it was predicated has not happened, the plaintiff is not entitled to recover in this action. The decedent in his lifetime received but a small part of his inheritance, nor, so far as appears, has his administrator obtained any since his death, and until enough had come to one or the other to enable him to make good the undertaking neither he nor his estate could be held. It cannot be said that he got his money because in a general way it was due him or he had that expectancy. That was true in the same sense that it is now when he made the

promise, and yet it cannot be claimed that he intended to be then presently held. His share must at least be defined by an account, if not actually set apart to him or his legal representative before either can be charged with having got it, and this must be the case before suit is brought.

Judgment is therefore directed to be entered on the verdict in favor of the plaintiff for $2,055, and in favor of the defendant non obstante veredicto on the reserved point as to all over and above that sum.