## Thomas Querney v. Johanna Querney et al.

1. TENANT IN COMMON—*what will not relieve, from obligation to contribute.* The fact that one co-tenant in common, in order to prevent a foreclosure of the estate in common, took upon himself the entire burden of an incumbrance, does not relieve his co-tenant from liability to pay his share of such incumbrance, even though obligation to pay is raised in a partition proceeding at a time when the claim as to such co-tenant would be barred by limitati·n in an independent action brought against him by the holder of such incumbrance.

Bill for partition. Appeal from the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1905. Affirmed. Opinion filed March 22, 1906.

KEEFE & SULLIVAN, for appellant.

FREELS & JOYCE, for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a bill in chancery in the Circuit Court of St. Clair County, by appellant against appellees, praying for partition of certain real estate and for an accounting. The cause was heard on bill, answer, certain stipulation, and evidence produced in open court.

Complainant and one William Querney were brothers and prior to February 16, 1881, and on that date they were copartners, engaged in the grocery business in the city of East St. Louis. During such copartnership they purchased the real estate in question and erected thereon a two-story brick building, in the lower story of which they carried on the grocery business, and William occupied the upper story with his family as a residence, On the date above mentioned, being indebted to W. J. Robinson in the principal sum of $2,000, bearing interest at the rate of eight per cent., they executed to him promissory notes therefor pay-. able two years after date, interest payable in quarterly installments, and secured the same by mortgage on the whole of said real estate. Soon after this they dissolved

partnership, William continuing the grocery business and continuing to occupy the premises until his death, February 3, 1904, and his widow, Johanna, and his children, Mary and Octavia, continued to occupy the same to the date of the rendition of the decree in this case.

During the time that elapsed between the dissolution of the copartnership and the date of the decree, William, during his lifetime, and his widow and children after his death made all necessary repairs, kept the property insured, paid all taxes and special assessments and interest on the $2,000 mortgage to Robinson, except the small sum of $19.78, which had accrued since the last preceding interest day.

The learned chancellor so stated the account as to find the amount due on the Robinson mortgage to be $2,019.78, and to bring Johanna, Mary and Octavia in debt to appellant in the sum of $1,013.50, for use and occupation of the premises, and decreed that appellant should take one-half the premises subject to a lien for one-half the amount of the Robinson mortgage and that he should have a lien on the remaining half for the $1,013.50, found due him for use and occupation, and that Johanna, Mary and Octavia should take one-half, subject to the lien for one-half the Robinson mortgage and to the further lien for the whole of the $1,013.50 to appellant.

Appellant is dissatisfied with the decree and prosecutes an appeal to this court. He insists that a larger sum should have been found and decreed to be due him for rent or for use and occupation of the premises, and that he should have been decreed to hold his half of the premises free from any lien on account of the Robinson mortgage.

The burden was upon appellant to establish his claim for rent, or for use and occupation, by a preponderance of the evidence when all the evidence was considered together. This he clearly failed to do, except as to a very small part, much less than the decree gives him, that accrued after the death of William. The only evidence of any kind in support of that part of his claim covering the period of time claimed for prior to the death of William, consists of

the fact that William occupied the premises, and the testimony of one witness introduced by appellant, who testified that on one occasion in a conversation with her, William "said that he was paying Tom (appellant) thirty dollars a month for the place." "That he was leaving the money in the bank for him."

The theory upon which appellant bases his contention that the decree should have given him his half of the premises free from a lien for any part of the sum due on the Robinson mortgage, is, that as to him the debt secured by the mortgage was barred by the Statute of Limitations. He contends that the statute not only relieves him from the duty to pay Robinson, but also from any duty to contribute to the discharge of this mortgage lien from the common estate. He contends that by reason of the Statute of Limitations this debt must be paid wholly by his co-tenants in common, and that it cannot be decreed a lien on other than their moiety of the estate, that he is neither bound in law nor equity to pay any part of the debt, nor to contribute to the reimbursement of his co-tenants in common, when they shall have paid it.

Robinson's note matured February 16, 1883. At its maturity the rate of interest was reduced to seven per cent., and the time of payment extended by agreement of all parties, to February 16, 1886, and at the expiration of that period the time of payment was again extended, in the same manner, to February 16, 1889. After 1889, without further agreement for extension, so far as the record shows, William continued, as before that time he had done, to pay the interest as it matured, to keep the building insured, to pay all taxes and special assessments levied against the property and to preserve and keep it from decay and waste, all of which the terms of the mortgage required that the mortgagors should do, upon pain of immediate forfeiture. This William did up to February 3, 1904, the day of his death, and the same was done by his widow and children after his death, up to the date of decree here appealed from. Upon this state of facts counsel ask: "Could William Querney

continue to pay the interest upon the indebtedness and thereby prevent the Statute of Limitations from running as to Thomas Querney?" They cite in support of their contentions Kallenbach v. Dickinson, 100 Ill. 427, and other cases and texts to the same purport.

We are of opinion that the authorities cited and relied upon by counsel for appellant have no application either to the issues or the facts of this case. This is not a suit by Robinson against appellant, in which appellant has pleaded the Statute of Limitations, and it is not our duty to determine here what law would apply in such case.

The controversy in this case is wholly between appellant and his co-tenants in common. Appellant sets up in his bill the fact of Robinson's mortgage, and avers that if any lien exists by reason thereof, "it exists upon the right, title and interest which said William Querney owned and had in said premises at the time of his decease and not the interest of your orator" (appellant). The answer of appellant's co-tenants in common admits the existence of Robinson's mortgage and avers that appellant is liable for one-half the amount due thereon and that the same is a prior lien upon his interest in the premises. Robinson entered his appearance as a defendant, suffered a default to go against him and did not testify as a witness. One-half the premises was more than ample security for the whole of the indebtedness to him and he had no interest in the controversy between the co-tenants in common concerning the matter.

It is elementary law that as between themselves co-tenants in common are all liable for the payment of liens and incumbrances existing against the common estate in proportion to their respective interests, and that such payment may be made by one of them, and when so made will inure to the benefit of all, the tenant making such payment being entitled to contribution from his co-tenants. And to secure such contribution, "courts of equity will enforce upon the interests of those who fail to pay a lien of the same character which has been removed." Fischer v. Eslaman, 68 Ill. 78.

Querney v. Querney.

Now if we assume, as counsel contend, that in order to save the whole property from the fate of foreclosure of Robinson's mortgage, William, as between himself and Robinson, had, made himself and his heirs solely liable to Robinson for the whole of this debt, and that Robinson had thereby lost his right to hold appellant, this would not relieve appellant from the duty to make contribution to William's heirs, and the court might properly enforce such contribution by decreeing a lien upon appellant's interest, as was done in this case.

There is another principle that governs in this case :  By virtue of their unity of interest, co-tenants in common sustain a fiduciary relation toward each other with respect to the common property, and any acts of one in relation to it, so far as beneficial to the estate, will be presumed, as between themselves, to be for all.  William had a perfect legal and equitable right to protect the common estate from the peril of a foreclosure of Robinson's mortgage, by paying the installments of interest as they came due, and by doing so he did not, as between himself and appellant, assume the payment of the whole debt, or release appellant's interest in the premises from the mortgage lien.

Counsel complain of certain rulings of the trial court, as to the admission and rejection of evidence, but none worthy of comment are pointed out in the brief, except as to the competency of appellant to testify in his own behalf. It was conceded that he was not competent to testify against the interests of the widow and children as to any matter occurring during the lifetime of the deceased brother, but it is contended that he was a competent witness as between himself and Robinson.  There was no controversy between him and Robinson.  Robinson had defaulted and confessed all the well-pleaded material allegations of the bill, so far as they affected him or his interests, if at all.  And further appellant was not asked for any fact concerning his relation with Robinson, and did not offer to testify to any.

The competent evidence in this record abundantly sup-

ports the decree, and no proper evidence offered on behalf of appellant was rejected.

The decree of the Circuit Court is affirmed.

*Affirmed.*